UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

SCOTT ALLAN SMITH,

Defendant.

**MEMORANDUM & ORDER**
19-cr-00421 (NCM)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is the U.S. Probation Department's ("Probation") Request for Modification of the Conditions or Term of Supervision, ECF No. 55, as to Scott Allan Smith. On March 12, 2024, Probation requested a summons for Mr. Smith to appear before this Court regarding the conditions of his supervised release, accompanied by a request to modify those conditions (the "Request"). The Court issued a summons for Mr. Smith's appearance on March 15, 2024, and he appeared before this Court on April 11, 2024. For the reasons discussed below, the Request is DENIED in part and GRANTED in part.

## BACKGROUND

In 2015, Mr. Smith pled guilty to Assault in the Second Degree and Felonious Restraint in state court for his assault of Emily Tripp. After his release from state custody, Mr. Smith made a series of threats against Jane Doe, the former Callaway County Assistant Prosecuting Attorney who prosecuted his 2015 assault case. These threats were transmitted over telephone, voicemail, and text message. Mr. Smith was taken into federal custody on August 16, 2019, and on September 12, 2019, a grand jury

returned a one-count indictment charging him with the Class D felony of Transmission of Threats, in violation of 18 U.S.C. § 875(c). Mr. Smith pled guilty to this federal charge on November 9, 2020. Presentence Investigation Report (the "Report") 3, ECF No. 23.

Mr. Smith's multiple threats against Jane Doe were explicit. For example—and there are many examples to quote—Mr. Smith called Jane Doe, identified himself, and stated, "I just want to tell you, you are about to die . . . that little girl in the background is about to die." *See* Report at 4–5. After presiding over Mr. Smith's prosecution and plea, the Court remarked that, of all the defendants he had sentenced, he had "rarely come across such evil, such an intent to terrorize someone." Tr. of Sentencing ("Sentencing Tr.") at 28:13–17, Sept. 17, 2021 (draft on file with court).

The Court sentenced Mr. Smith to the statutory maximum of 60 months imprisonment and three years of supervised release. Mr. Smith is subject to a number of special conditions as part of his supervised release, including (i) a prohibition on contact with Jane Doe; (ii) Global Positioning System ("GPS") monitoring for a period of 12 months; (iii) drug and mental health assessments with the possibility of compulsory treatment programs; and (iv) submitting his person, property, residence, vehicle, and electronic devices and data to search by a probation officer, subject to reasonable suspicion that Mr. Smith violated a condition of his supervision. *See* Request at 1–2.

On February 21, 2024, Mr. Smith began his current term of supervised release and to date has complied with all conditions. Request at 3.

The Request is premised on Probation's undisputed explanation of events: Mr. Smith was presented with a Probation Form 49 requesting that he consensually participate in the Computer and Internet Management/Monitoring Program ("CIMP"),

described below.[1] Mr. Smith signed the form, but later rescinded his agreement to participate. Probation subsequently urged Mr. Smith again to join CIMP, based on his criminal history and concerns about public safety. Mr. Smith again refused to sign the CIMP condition waiver. The CIMP condition was requested in order to monitor Mr. Smith's behavior and to "mitigate risk to the victim." Request at 3.

After Mr. Smith was asked to participate in the CIMP program, the government informed Probation that he had contacted Ms. Tripp via social media. Request at 3. Mr. Smith has characterized his contact with Ms. Tripp as motivated by a desire for "closure" and consisting of apologies for his past behavior. *See id.*; Modification Hr'g Tr. at 06:09–22, April 11, 2024 (draft on file with court). Mr. Smith also contacted Joshua Bullard, the father of Ms. Tripp's child, through social media. Although the exact substance of these communications is unclear, the parties agreed that these communications were not "threatening." *See* Modification Hr'g Tr. at 06:06–08. However, the government maintains that Mr. Smith's messages were "harassing." *Id*. at 14:05–:08.

On February 8 of this year, Ms. Tripp obtained a "Stalking No Contact Order" from a circuit court, and on February 15, Mr. Smith was provided a copy of the order and directed to cease contact with Ms. Tripp. *See* Request at 3. Mr. Smith has not had any contact with Ms. Tripp since the messages described above. Modification Hr'g Tr. at 07:08–12.

Before the Court are three additional proposed conditions to Mr. Smith's supervised release: (1) that Mr. Smith not contact Ms. Tripp, directly or indirectly, by

---

[1]    The Court had not required participation in CIMP as a special condition at Mr. Smith's sentencing.

any means (the "Contact Condition"); (2) that Mr. Smith report all electronic communications accounts to Probation, including account identifiers and passwords, and subject those accounts to access and search by Probation upon reasonable suspicion that Mr. Smith violated a condition of his supervision (the "Search Condition"); and (3) Mr. Smith's enrollment in CIMP (the "CIMP Condition").

The CIMP Condition is a bundle of intrusive requirements, including that Mr. Smith (i) identify various internet-capable devices and/or electronic systems and media to which he has access; (ii) allow examination of those devices and installation of monitoring software on them; (iii) allow geolocation of each device; (iv) provide Probation advance notification of "planned use" or purchase of any devices; (v) allow Probation access to any devices or captured data with or without suspicion that Mr. Smith violated his conditions of supervision; (vi) be subject to Probation's power to limit him to "only one personal Internet-capable device, to facilitate [Probation's] ability to effectively manage and monitor the device"; and (vii) permit seizure and removal of his devices and electronic media for analysis by law enforcement or Probation based upon reasonable suspicion that a violation of a condition of supervision or unlawful conduct occurred or was about to occur. *See* Request at 2.

The government agrees in full with the proposed modifications. *See generally* Gov't Letter Regarding Modification ("Gov't Letter"), ECF No. 59. Specifically, the government argues that the proposed conditions are tailored to Mr. Smith's prior offenses and criminal history and would serve the interests of public safety. *See* Gov't Letter at 3. For his part, Mr. Smith consents to the Contact Condition and the Search Condition. *See* Def. Letter Regarding Modification ("Def. Letter") 1, ECF No. 60.

4

However, he opposes imposition of the CIMP Condition in its entirety. *See generally* Def. Letter.

On April 11, the Court held a hearing on the Request pursuant to Federal Rule of Criminal Procedure 32.1(c)(1), and granted imposition of the Search and Contact Conditions on consent. The Court expanded the Contact Condition to explicitly forbid Mr. Smith from contacting Ms. Tripp via social media, and for the expanded Contact Condition to apply to Mr. Bullard as well. At the conference, the Court denied imposition of the CIMP Condition and explained its reasoning for doing so. Below, I further explain that decision.

## LEGAL STANDARD

The Court may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2). Modifications must be "reasonably related" to a variety of "factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *Id.* § 3583(e). These considerations include, but are not limited to: the nature and circumstances of Mr. Smith's offense and his history and characteristics, *see id.* § 3553(a)(1); the types of sentences normally imposed for the applicable offense and defendant categories set forth in the Sentencing Commission guidelines, *see id.* § 3553(a)(4); and the need for deterrence of future criminal conduct, protection of the public, and provision of resources such as educational or vocational training and medical care for the defendant, *see id.* §§ 3553(a)(2)(B–D). The Court must ensure that conditions of supervised release are reasonably related to these sentencing purposes and "impose no greater restraint on liberty than is reasonably necessary" to accomplish sentencing objectives. *United States v. Haverkamp*, 958 F.3d 145, 151 (2d Cir. 2020).

5

Further, the Court may reasonably modify the conditions of supervised release at any time, even absent a change in circumstance. *United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016).

The Second Circuit has spoken clearly on the imposition of computer monitoring conditions, requiring this Court to "narrowly tailor[]" monitoring conditions lest they "sweep so broadly as to draw a wide swath of extraneous material into [their] net." *United States v. Salazar*, No. 22-1385-cr, 2023 WL 4363247, at *3 (2d Cir. July 6, 2023) (quoting *United States v. Lifshitz*, 369 F.3d 173, 190 (2d Cir. 2004)). Restrictions on internet use must also be narrowly tailored. *United States v. Trotter*, 321 F.Supp.3d 337, 358 (E.D.N.Y. 2018) (quoting *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002)). This requirement is buttressed by the Supreme Court's recognition that personal internet-connected devices like cell phones are "indispensable to participation in modern society." *Salazar*, 2023 WL 4363247, at *3 (quoting *Carpenter v. United States*, 585 U.S. 296, 315 (2018)). As such, special conditions of supervised release that monitor a supervisee's computer use and limit his internet access "must be carefully explained and robustly supported by a district court." *Id.* (quoting *United States v. Eaglin*, 913 F.3d 88, 91 (2d Cir. 2019)).

## DISCUSSION

The proposal that Mr. Smith be subject to unfettered and suspicionless search of his devices and all the data contained therein, and alert Probation prior to "planned use" or purchase of his devices—among other requirements—does not meet the Second Circuit's exacting standard. The CIMP Condition sweeps far more broadly than necessary to deter Mr. Smith's criminal conduct, *see* 18 U.S.C. § 3553(a)(2)(B), protect the public from further crimes, *see id.* § 3553(a)(2)(C), and address defendant's criminal

6

history and characteristics, *see id.* § 3553(a)(1). Nor is there any indication that the CIMP Condition is the only effective method of deterring Mr. Smith and "protect[ing] the public" from any future crimes. *See id.* §§ 3553(a)(2)(B–C). In this case, CIMP's comprehensive monitoring capabilities do not weigh in favor of its imposition.

To be sure, Mr. Smith's past offenses suggest a need for monitoring and supervision. Indeed, as previously discussed, Mr. Smith contacted Ms. Tripp, a victim of his past threats and violence, earlier this year. In doing so, Mr. Smith demonstrated woefully poor judgment and likely exacerbated the terror he previously inflicted. Nevertheless, the special conditions otherwise currently placed on Mr. Smith suffice to meet the factors referenced in § 3583(e)(2). Mr. Smith is already required to submit his "person, property, house, residence, vehicle, papers, computers . . . [, or] other electronic communications or data storage devices or media" to search upon reasonable suspicion that defendant violated a condition of his supervision. Request at 2. If the government has reasonable suspicion that he is violating a condition, it may search any of his property it reasonably suspects contain evidence of that violation. *See, e.g.*, J. as to Scott Allan Smith ("Sentencing J.") 5, ECF No. 36.

On top of this, Probation has virtually complete access to Mr. Smith's digital data so long as a relatively low threshold of suspicion is met. Pursuant to the Search Condition, Probation can access and search any information in Mr. Smith's personal electronic communications service accounts based on a reasonable suspicion that he has violated a condition of his supervision and that the account contains evidence of this violation. As additional deterrence, Mr. Smith faces revocation of his term of supervised release and an additional term of imprisonment if he is found in violation of *any* of his current conditions. 18 U.S.C. § 3583(e)(3). Those conditions—without the addition of

7

the CIMP Condition—are sufficient to meet the purposes outlined in Section 3553(a), without imposing greater restraint on Mr. Smith's liberty than necessary.

Additionally, the Court finds it important that Mr. Smith has not violated any terms of his supervision. The Court declines to impose such intrusive monitoring for this reason as well. Mr. Smith's actions—taken, as noted above, in extremely poor judgment—did not defy conditions of supervised release since he was under no legal obligation to avoid contacting Ms. Tripp or Mr. Bullard when he did so. *See* Sentencing J. at 5. And while the Court need not wait for Mr. Smith to violate his supervision terms to modify them, this fact is relevant when considering whether to impose monitoring of this scale. It is also worth noting that Mr. Smith is forbidden from contacting (and has not contacted) Jane Doe, the victim of the crime for which he was convicted in this Court. Now that he is prohibited from directly or indirectly contacting Ms. Tripp and Mr. Bullard, his conditions are more likely to deter future criminal or unwanted conduct and protect a wider network from further possible crimes.

Moreover, the Court is not persuaded that Mr. Smith's criminal history alone warrants imposition of monitoring of this magnitude at this time. As recognized by the Court, Mr. Smith's crimes against Jane Doe (and Ms. Tripp) were serious and violent.[2] However, that cannot be the end of the inquiry into whether the CIMP Condition is

---

[2]    The Court rejects Mr. Smith's argument that the CIMP Condition is inappropriate in cases where a complaining witness would likely disclose any threats after the fact. Def. Letter at 3. This reasoning ignores the Court's duty to protect the public from further crimes by the defendant, rather than solely learning about them afterwards. *See* 18 U.S.C. § 3553(a)(2)(C). Computer monitoring can, in appropriate circumstances, be necessary to protect victims of assault. The Court rejects any suggestion that the unfortunate presence of a complaining victim obviates the need for special search conditions.

8

necessary. Such an abbreviated consideration would categorically justify imposition of computer monitoring in similar cases and ignore the Court's duty of individualized assessment when imposing special conditions of supervised release. *See United States v. Betts*, 886 F.3d 198, 202–03 (2d Cir. 2018) (explaining that "[a] district court is required to make an individualized assessment when determining whether to impose a special condition of supervised release"). Mr. Smith's prior crimes against Ms. Tripp and Jane Doe do not on their own warrant imposition of such a broad program.

Furthermore, the proposed CIMP Condition threatens to stifle Mr. Smith's ongoing economic rehabilitation. "Supervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation." *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015); *see also United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration."). As the Court is required to consider the ramifications of special conditions against the defendant's "needed educational or vocational training[,]" 18 U.S.C. § 3553(a)(2)(D), the Court notes that imposition of the CIMP Condition could result in Mr. Smith losing his "gainful" employment, *see* Def. Letter at 3 n.1. Indeed, the Report indicates that Mr. Smith was mostly unemployed for nearly a decade and a half, between approximately 2009 and 2023. That is no longer the case. Only guaranteeing Mr. Smith one internet-connected device could hamper his ability to engage in employment and other activities important to re-entry.[3] *See Salazar*, 2023 WL 4363247, at *3.

---

[3]     Despite the text of the Request, at the hearing, the government and Probation represented to the Court that Mr. Smith would not be limited to one personal internet-capable device. Instead, the government represented that Mr. Smith would be allowed

Accordingly, the Request is **DENIED** insomuch as it seeks to compel Mr. Smith's participation in the CIMP program at this juncture. The Search Condition and Contact Condition are **GRANTED** as modified above.

**SO ORDERED.**

                                   ___/s/ Natasha C. Merle_____
                                   NATASHA C. MERLE
                                   United States District Judge

Dated:      May 3, 2024
              Brooklyn, New York

---

to have "a computer and multiple phones that would all be a part of the program." Modification Hr'g Tr. at 04:02–06. Though different from the Request, the Court accepts this representation for purposes of this ruling. Nevertheless, the Request also states that Mr. Smith "*may be limited* to possessing only one personal Internet-capable device, to facilitate the U.S. Probation Office's ability to effectively manage and monitor the device." Request at 2 (emphasis added). The Court interprets this as a request for authority to regulate the number of devices Mr. Smith may possess to facilitate management of surveillance. The Court considers that requested authority in assessing the reasonableness of the CIMP Condition.